IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  12-CR-115-CVE |
| | ) | |
| WESLEY SCOTT McGINNESS, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

**I.  INTRODUCTION**

On August 2, 2012, Defendant Wesley Scott McGinness pleaded guilty to a two-count information charging him with a wire fraud scheme that cost the H.O.W. Foundation of Oklahoma ("HOW") $1,584,114.89 and a tax violation relating to conduct that cost the United States Treasury $419,407.34.  (Pre-Sentence Investigation Report ("PSR") at ¶¶ 1, 3, 10, 11.)  In this sentencing memorandum, the United States will review the factors to be considered by the Court in determining a sentence for McGinness.

**II.  ARGUMENT**

**A.  THE STATUTORY FRAMEWORK:  18 U.S.C. § 3553(a)**

Section 3553(a) provides:

> (a)  The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)　the need for the sentence imposed –

(A)　to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)　to afford adequate deterrence to criminal conduct;

(C)　to protect the public from further crimes of the defendant; and

(D)　to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)　the kinds of sentences available;

(4)　the kinds of sentence and the sentencing range established for –

(A)　the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –

(i)　issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii)　that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B)　in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission

       into amendments issued under section 994(p) of title 28);

   (5)   any pertinent policy statement –

   (A)   issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

   (B)   that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

   (6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

   (7)   the need to provide restitution to any victims of the offense.

The Supreme Court's decision in *United States v. Gall*, 552 U.S. 38 (2007), suggests the following summary of those factors:

   (1)   Consideration of the offense and the defendant
   (2)   Consideration of general purposes of sentencing
   (3)   Consideration of kinds of available sentences
   (4)   Consideration of the Sentencing Guidelines
   (5)   Consideration of Sentencing Commission policy statements
   (6)   Consideration of sentence disparities
   (7)   Consideration of restitution

*Id*. at 50 n. 6. These factors will now be considered in turn.

## B. THE SENTENCING FACTORS

### 1. The Offense and the Defendant

McGinness has experienced a lot of discontinuity in his family life, both as a child and as a husband and parent. (PSR at ¶¶ 37, 38.) He does maintain frequent contacts, however, with his two grown children. (*Id*. at ¶ 38.) He served his country for about five years in the military, where he garnered significant honors. (*Id*. at ¶¶ 37, 43.) It is a sad turn of events that one so commended should now be facing the opprobrium of a criminal sentence.

Alcohol and gambling have been the double-barreled bane of McGinness's life. (*Id*. at ¶¶ 38, 40, 41.) Having survived the pellets of the one, he has fallen to the buckshot of the other. Ironically, his admirable triumph over the powers of alcohol put him in the very position that enabled him to steal so much money to feed the gambling habit. He successfully completed the HOW program 22 years ago and has had no alcohol since. (*Id*. at ¶ 41.) From a history of employment failure in the private sector (*id*. at ¶ 44), McGinness progressed to becoming a counselor and eventually the director of HOW, a prominent charitable organization in Tulsa. (*Id*. at ¶¶ 6, 44.) But in that capacity, he was also able to conduct his fraudulent scheme for years with impunity. (*Id*. at ¶ 7.)

The offense to which McGinness pleaded guilty is a non-violent crime, a type of fraud in which he cheated HOW out of $1,584,114.89 and the U.S. Treasury out of $419,407.34 over a period of eight years. He perpetrated the crimes in a number of ways. McGinness used HOW checks to pay for gambling cash drawn on credit cards issued to him and HOW. (*Id*. at ¶ 7.) He covered those tracks by making false entries in the books and records of the

4

foundation. (*Id*.) He also presented bogus financial statements to the board of directors on an annual basis. (*Id*.) In addition, McGinness stole cash from HOW's thrift store. (*Id*. at ¶ 8.) Finally, he submitted false tax returns to the Internal Revenue Service to mask the true state of his financial condition. (*Id*. at ¶ 9.)

In his favor, McGinness is 65 years of age and has had virtually no contact with the criminal justice system. (*Id*. at ¶¶ 32-36.) His criminal history score is zero. (*Id*. at ¶ 34.) Also to his credit, he cooperated with the Federal Bureau of Investigation and the Internal Revenue Service-Criminal Investigations from the early stages of their joint investigation. He evinced a willingness to admit his guilt to the court almost from the start.

McGinness suffers from considerable physical infirmities. (*Id*. at ¶¶ 39, 64, 65.) The PSR recognizes that his condition may be the basis of a departure or a variance from the Guideline range. (*Id*.) This aspect of sentencing will be considered below.

### 2. Sentencing Objectives

Section 3553(a)(2)(A) recognizes the goal of "just punishment." The wire fraud loss in this case was $1,584,114.89, which increased the guideline calculation by 16 levels. (PSR at ¶ 16.) The tax fraud loss was $419,407.34, which increased the guideline calculation by 2 levels. (*Id.* at ¶ 22.) The Guideline range of 41 to 51 months in Zone D is fair and just, given the extent of McGinness's scheme, the length of time it existed, the fact that it harmed a charitable organization, and the amount of money involved.

Deterrence is another aspect of the sentencing objectives. Deterrence pertains to both the future conduct of the defendant and also to the public. In this case, the PSR explains that

5

it is unlikely McGinness will commit offenses in the future. (*Id.* at ¶ 64.) That is a reasonable view. Any sentence, therefore, will not contribute to McGinness's reformation as to recidivism – it is doubtful that he will ever commit another crime, given the fact that he is not likely to be employed again. That leaves, therefore, only two aspects of sentencing to be considered – deterrence of other would-be offenders and punishment.

It is difficult to gauge the impact of one man's sentence upon the behavior of another. Since the days of the gibbet and stocks are long gone, one may question whether the public is even aware of many sentences or, if so but inclined to commit a similar offense, whether a person knowing of a precedential sentence really stops to consider the fact that they may end up in the same shoes as the one who went to jail. Public deterrence may be a matter akin to "reputation" evidence of character in that, over time, a criminal system acquires a renown for dealing with crime in certain ways, even though the public may not have or, at any rate, retain an awareness of particular sentences. If that be true, then the issue of public deterrence may carry less weight in a case where the defendant appears to be less of a risk of future crime and also likely to impose substantial costs on the system for his incarceration.

This leaves the issue of punishment as a reason for incarceration. In America today, punishment for punishment's sake does not carry the weight in the context of fraud that it does for violent crimes such as murder, robbery and rape, or crimes that undermine the safety and security of society, such as burglary, drug trafficking and child pornography. Punishment for punishment's sake bears the savor of revenge, a concept beyond which government may hope to have progressed, but still people expect from earliest schooldays

that crime does not pay; rather, it carries a price. In this case, what should the price be?

But for McGinness' physical condition, the government would urge a sentence within the guideline range. His crimes were simply too serious to avoid that consequence. For years McGinness held the highest position of executive authority in a well-known charitable organization committed to an important work of social improvement. As he well knew from his own struggles, HOW has been the means for men to overcome their demons of addiction. It provided the means to McGinness himself. By gutting the finances of the organization, McGinness placed its ministry in jeopardy; he put rehabilitation of others at risk for the sake of satisfying his own appetite for gaming. He stole over a million dollars during years of thievery. He cheated the Treasury out of hundreds of thousands of dollars in taxes. Those acts warrant a substantial punishment. Even given McGinness's physical condition, the government requests that the Court impose a sentence that includes a period of incarceration as a punishment for his offenses. Perhaps he should not be incarcerated for a long time, but McGinness deserves to be punished by spending some time behind prison walls as a result of what he did.

### 3. Kinds of Available Sentences

Statutorily, McGinness is eligible for probation as to Count 1 but, under the Guidelines, he is not, because he falls within Zone D. (*Id.* at ¶ 52, 53.) Only three years of supervised release can be imposed as to Count 1 and one year of supervised release as to Count 2. (*Id.* at 50, 51.) Thus, there is a very short period of supervision during which a huge amount of restitution would have to be paid. (*Id.* at ¶ 58.)

4. **The Sentencing Guidelines**

As already noted, the Guideline range of imprisonment is 41 to 51 months. (PSR at ¶ 48.)

5. **Sentencing Commission Policy Statements**

The Guidelines occupy a different position in the sentencing process than they did when they were first instituted. *United States v. Booker*, 543 U.S. 220 (2005), considerably altered the impact of the Guidelines by making them advisory. Still, however, they are to be considered, including their Policy Statements. Two aspects of the Policy Statements are notable here.

First, the Policy Statements review the worthy objectives of the Guidelines. The "basic objective was to enhance the ability of the criminal justice system to combat crime through an effective, fair sentencing system." United States Sentencing Commission, *Guidelines Manual* at 2 (Nov. 2011) (The Basic Approach (Policy Statement)). Two other objectives were then described:

> Second, Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders. Third, Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity.

*Id*.

Second, the Policy Statements explain that the Sentencing Commission consciously wrote Guidelines that would result in sentences of imprisonment for many offenses that

formerly had received sentences of probation. *Id*. at 8 (Probation and Split Sentences). Such crimes included fraud, embezzlement and other economic crimes. *Id*. Moreover, the Guidelines also addressed sentences of imprisonment for first offenders by providing for various kinds of sentences within different zones of the Sentencing Table, which were defined by different offense levels. *Id*.

### 6. Sentencing Disparities

The Guidelines were promulgated based upon a concern that defendants similarly situated be sentenced in a similar manner. *United States v. Garza*, 1 F.3d 1098, 1100 (10th Cir. 1993). Their very purpose was to avoid disparities among defendants. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 738 (10th Cir. 2005). A sentence that includes some period of incarceration will mean that McGinness's punishment does not deviate too much from those of other offenders who commit similar frauds.

### 7. Restitution

McGinness owes $1,584,114.89 to HOW. (*Id.* at ¶ 58.)

McGinness owes $366,564.82 to the US Treasury. (*Id.*)

McGinness has not repaid any amounts since his crimes were discovered, although he has considerable assets, according to his financial statement. (*Id.* at ¶ 45.) He has, however, agreed to the forfeiture of some of his assets.

## III. **CONCLUSION**

Here, the circumstances of the offense and the purposes of sentencing, along with the worthy goal of maintaining uniformity among sentences, suggest that the Defendant Wesley Scott McGinness should receive a sentence that includes some period of incarceration.

Respectfully submitted,

DANNY C. WILLIAMS, SR.
UNITED STATES ATTORNEY

 */s/ Kevin C. Leitch*
KEVIN C. LEITCH, OBA #5366
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700 telephone
(918) 560-7946 fax
kevin.leitch@usdoj.gov

# CERTIFICATE OF SERVICE

  I hereby certify that on October 25, 2012, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

  Mark D. Lyons
  Attorney for Defendant

            */s/ Kevin C. Leitch*
            Kevin C. Leitch
            Assistant United States Attorney